Good morning, your honors, and may it please the court. My name is Jonathan Ogata, and I represent the appellants in this case, Milda Rodriguez Vasquez and her son, M.S.M.R. I will endeavor to reserve four minutes for rebuttal. This case comes before the panel with a unique procedural history, with significant motions practiced both at the district court and before this court's motions panel. Given this history, appellants acknowledge that this panel now has some procedural housekeeping, including issues related to the motion panel's orders and the medical evidence developed here on appeal. All right, Mr. Ogata, essentially, we have a venue issue. And then sort of oddly, there has been significant additional evidence submitted that was not before the district court. So we have a few options here. Well, obviously, the government's making claims of mootness, but there's claims on the venue. And then there's significant that this is a completely different record than what the district court saw. So if we I'm sure that you obviously would love for us to say that you win based on everything that you put before us. But we're not really I don't know that we're in a very good position to go through that evidence with what the district court didn't have and did have and make that determination. So remand is a possibility. Or we could say the district court didn't abuse its discretion based on what it had. But now there's additional evidence. Take a look at that. But if we said the district court didn't abuse its discretion, then that jumps over the venue issue. And we've got that too. So you got a whole lot of stuff going on here. Yes, your honor. So I'll propose two pretty clear solutions that we believe are supported by law. As your honor noted, we believe that this court could either reverse and remand the district court finding that they made clearly erroneous findings of fact or reverse the district court and remand so that they could properly consider the medical evidence, including the medical evidence on appeal. Or alternatively, this court could sidestep determinations of whether the district court erred in this case and simply vacate the district court's order, send it back down to the district court so that they have an opportunity to engage in their role as fact finder and evaluate the additional medical evidence that was developed here on appeal, which includes the services that were performed in Texas, as well as the supplemental authority that was provided to this court motions panel. Indeed, as we're And Dr. Giza, who is a treating physician, would be able to provide even more medical information to the district court at that time. So those we believe are two supported options this panel could could do. Well, is it one option also venue was improper in the central district to transfer the case to the western district of Texas? Certainly, your honor. However, the appellant in this case have been released and are currently residing in Los So at the moment, there is no venue issue. So we recognize that this court might find venue issues at the inception of this case. And wasn't that when we evaluate venue at the inception of the case? That's traditionally correct, your honor. I think that procedurally, however, though, for purposes of judicial economy, what could also happen is if this court did transfer the case, any subsequent actions that were filed would be filed in the central district of California. And so which includes the PFR that was recently filed in this case, which is filed currently pending in the Ninth Circuit. So what that would create is this issue where the immigration case is proceeding in one area of the country in the Ninth Circuit, whereas this habeas petition is now proceeding in a district court in Texas and would be appealed to the Fifth Circuit. And though the cases are distinct, they certainly relate to each other and as they engage the same individual. Isn't that the traditional habeas rule that habeas is filed in the petition of custody? I mean, in the district of custody. So it seems like Congress anticipated that. Certainly, your honor, that for core habeas petitions, when individuals are seeking release from custody, that is certainly correct. You file the habeas petition in the district where the individual has control over the body. However, in this case, it's a non-core habeas petition. And in non-core habeas petitions where individuals aren't seeking release from custody, but are challenging the legality of the detention itself. In other words, the process that is being imposed upon the individuals, which is exactly what's happening in this case. We weren't saying that you must release these individuals. We were saying that the process that you're employing to deport them harms these individuals to such a degree that it raises constitutional questions and violates other statutory and legal provisions. One question on that. So I think one of your prayers for relief was seeing the doctor of your petitioner's choice. So wouldn't that require the release of the petitioners? It doesn't necessarily require that. However, that was kind of a good result. In other words, what the motions panel's order demonstrates is that an individual can be in custody and still get treatment. In other words, the court ordered the ICE officers to allow MSMR to get treatment in Texas. He wasn't released from detention at that time. Well, I suppose in the literal sense, he was released so he could go get treatment. But he was still under that authority of ICE at that time as he was getting treatment at the Texas facilities. So why is that not a core habeas petition then? Because that happens all the time when, at least in the immigration class, when you're a habeas, you're asking for relief from detention, even if you are still under the authority of ICE. I think this court held that earlier this year with the COVID situation. Right, your honor. But I think the other components of the release that we sought also demonstrate that it's not just release that we were seeking. In other words, nowhere in our petition do we say that the government needs to release them. What we're saying is the government needs to provide adequate treatment and not put MSMR on a plane because that further exacerbates his illness. And so we aren't asking what core habeas petitions inquire about, which is focused on immediate release from custody. A court could easily grant the TRO that we wanted in this case and not have MSMR released from custody, though certainly that could raise other issues that, you know, ICE isn't able to provide the medical care provided, that they aren't in a position to accommodate that kind of relief, but that doesn't go to the relief thought, just ICE's capability. One question, one of your claims was also that the process leading to the revocation of the petitioner's release claim, cause of action six. So that seems to challenge the detention. So wouldn't that, if you're being released immediately? It could, if ICE wasn't able to, to correct or the court could order ICE to come into compliance with whatever provisions that we are requesting. If ICE is incapable of doing that, then certainly obviously release would be the logical next step. But we don't believe that the request in the habeas petition itself, and certainly not the ones in the TRO that is at issue in this case, underline the core components of the habeas petition, though I understand that we're currently discussing the kind of habeas jurisdiction venue issue. But in analyzing that issue, most courts in this district, I will note that the ninth circuit hasn't really opined exactly on the individuals who should be named in this case, in these types of petitions. And that kind of makes the determination of whether venue slash lion's share of the district courts in this circuit have allowed individuals in types of cases like this, when they're challenging the procedures applied to the individuals, to name executive individuals like Chad Wolf, like William Barr. There are cases out of the Northern District, the Southern District, the Northern District of California, the Southern District of California, the Western District of Washington, Central District of California, District of Arizona, District of Nevada. And these cases are all, can all be found at footnote four in our reply brief. And so I think if this court looks at what the district courts are doing and how they're reviewing these types of habeas petitions, it's clear that we properly named the respondents in this case, and by properly naming those respondents, we properly raised these claims in the Central District of California. Because the proper analysis, the traditional venue analysis, and the lion's share of everything that happened in this case, happened in the Central District of California. The immigration proceedings occurred in the Central District of California. The ICE field office that was in charge of MSMR was in the Central District of California. Counsel, aren't these all fact questions and that the district court should opine on? I, we completely agree, your honor. The district court should have an opportunity to properly have a chance to review everything before the record. And so sending this case back to not only sort through the facts that were developed on appeal, but also to do a full venue analysis that was briefed before this court's motions panel could fully happen at the district court. And we believe that that would be the proper place for them to do that. And so in accord with the options that we kind of discussed at the beginning, a vacature of the district court's order and a simple remand so the district court can kind of review anew the issues of venue, habeas jurisdictions slash venue, as well as the new factual determinations that were developed on Mr. Ogata, just because I always like to understand context, my understanding with your, you're representing your client pro bono right now, but your client had another lawyer previously. My understanding is that they got caught right after they crossed in, they were in Rio Grande or something. And then, so then they were, they were recorded, they were required to report, and then they missed their hearing date. And so they were removed in absentia. Then we got to the point where then ICE was going to deport them. They did deport the stepfather, but they let the mother and I think the boy, that's the question here, who has the traumatic brain injury and another child, I guess, stay. So as long as that in absent, and then they didn't file an became, so as long as they have that in absentia order against them, they can't get any immigration relief. But are you, you're trying to get them immigration relief? That's correct, Your Honor, not in this case, the immigration proceedings are proceeding separately, a PFR has been filed. But as long as, but right now, but right now, they have no, I mean, they obviously weren't here a long time, so they couldn't have been seeking cancellation of holding. But they have to get that absentia ruling vacated, or they, they're nowhere. Is that right? That's correct, Your Honor. And that is being raised in the PFR that was filed this, this week, that will be kind of proceeding analogously. So if, let's, if, hypothetically, if this panel were to grant the TRO, they, they have no, right now, they have no path to being here legally. So the TRO would have to be reviewed when the child could be moved. Is that correct? That's correct, Your Honor. So wouldn't that more likely, wouldn't that be better in the district court to, if the district court decided to grant a TRO to review it, because you don't, they can't get immigration status here because of his TBI indefinitely, if they have no other route. Isn't that correct? That's correct, Your Honor. And so what we would say, if this court is inclined to grant the TRO or direct the district court grant the TRO, what that would allow the district court to do is grant the TRO and then set an OSC so that we could determine issues of preliminary injunction. And then the district court could monitor that preliminary injunction as the treatment event of MSMR continues pro bono at UCLA hospital. But putting right inside of that, that the venue was proper. So really the vacature and the remand leaves all of that open. That's correct, Your Honor. If this court determines the TRO should be properly granted, it would kind of skip over the venue component as well as any other jurisdictional components. So the court would be determining that the venue is proper and will likely indicating that venue is proper, but there are no other issues and then allow the district to just marshal the facts that have been developed here on appeal, as well as the continued monitoring of MSMR as the treatment continues. Do you want to save any time for rebuttal? Judge Kelly, can I ask one question? Yeah, go ahead. Sorry. Just to address the mootness question, it seems like you did receive all the relief you asked for, except for an injunction against putting the petitioners on a plane. Is that what saves us from being moot or is there something else also? No, Your Honor. We believe that certainly the plane issue does create a component of why it's not moot. We also requested that we get notice, 72 hours notice before the appellants are moved. That has not been provided to us yet. Also the medical access claim as the government has read it is far too narrow. Our access wasn't a single instance of access, but like access in the full meaning of the terms. In other words, access to allow the physician to continue care that is necessary. So that access component continues so long as care is necessary and then we'll last at that point and that has not yet been provided. If I could save the remainder of my time, Your Honor. Okay, since we've asked a lot of questions, I'll give you two minutes for rebuttal. Yes, thank you, Your Honor. Okay, we'll go to the government now. Good morning. Morning, Your Honors. Sarah Fabian on behalf of the government appellees and government respondents below. This case, the government recognizes has very difficult facts, of course, underlying it. However, it's the government submission that there are really three independent reasons why this appeal could be dismissed by the court. I think I'll touch on the two, I think that were discussed during my colleague's argument. I guess on the one on the mootness, though, Ms. Fabian, if the government is unwilling to state that it won't detain or remove MSMR in a manner that could exacerbate his brain injury, how is this case moot? Your Honor, our position would be, and I think this was sort of highlighted by my colleague's argument, the argument here and the submission by the petitioners is this isn't a the detention. They're not challenging the removal. That would be a core habeas, which petitioners have clearly asserted. That's not what it is. And so that's not the harm that could be revisited on the petitioner because that, as they're saying, that's not the harm they're complaining about in this case. Did you challenge Bennu in the district court? We did, Your Honor. Yes. But the district court didn't really rule on it or what happened? That's correct. It was raised in the briefs, but the district court did not rule on it. I mean, I guess I would suppose having proceeded to rule on the merits, that was somewhat of a denial of our claim, but it was raised and I don't believe it was addressed, at least not substantively in the court's order. But I think if we're looking, so the very sort of argument that this is a non-core habeas and that the issue is the medical care and the decision to place the petitioner on a plane and to remove in the absence of medical care and in the absence of certain medical conditions, that then has to be part and parcel of the mootness analysis. So it's not can the government or will the government pick the petitioner up again, but the question is will the government pick the petitioner up again in a situation where he will be denied access to medical care in the context in which he was allegedly being denied it at the time of the filing. And as my colleague acknowledged, that simply can't be the case because we've had nine months of not only our claim, to the extent that the argument is the claim is broader than just the initial medical analysis by two individuals. That of course did occur and that occurred on the order of this court and that did occur while petitioner remained in custody. But in addition, over the last nine months, there's been ongoing medical treatment. We're not aware of the status of that. But would you concede that what's before the court now is very different than what was before the district court at the time? I mean there's a lot more in the record that supports the appellant's position than was before the district court. Sure, I think I mean I certainly would concede that there's a lot more in the record now than than was ever before the district court. I don't dispute that. I think it's what where we are in this court though is an appeal from a TRO denial. And so if we're looking at was that TRO properly denied, if we're getting all the way to the merits there, then I and I think that was discussed at the outset of the argument, that then we really are going back to what was before the court then. Okay, but if we affirm the district court and say based on what the district court had at that time, the district court did not abuse that did not abuse its discretion. We're also by doing that we're saying that there was that venue was appropriate. So but even if we affirm the district court and say okay you know based on that the district court did not err. But how can we what would prevent them from enter just filing a new petition with all the new evidence? I mean it's certainly not the same petition with the new evidence is it? I mean it's hard to ignore some of the new evidence. Your honor, I think I think what your honor is suggesting would be an acknowledgement that the case as it stood in February is moot. That there's new evidence we have no I wasn't acknowledging that hypothetically. Okay I wasn't saying that. I was saying if I'm saying it's not moot and I look at what the district court did, I could say the district court did not abuse its discretion based on the medical evidence it had before it then. But there's a lot more medical evidence that's before us now. I mean and I don't know what the district court would have done if it had had all of that. So I could say you didn't abuse your discretion at the time. But if I say that I'm saying venue was appropriate and I'm saying it's not moot. And then why can't they could just refile it with all the new evidence right? I think then where we would be your honor is that and if this court did find that there was properly habeas jurisdiction in the central district but what we're appealing now is or what we're here on appeal is the denial of the TRO. And the court said well the district court properly denied the TRO. Then we would you would dismiss the appeal and send it back to the district court. The district court would would then have you're having found the district court had habeas jurisdiction. The district court would proceed to to try the existing habeas. And I guess that would be a question for the district court if the district court then wanted the additional evidence and in order to show cause of the situation today. The government seems pretty though motivated to send these people back to Guatemala. And I'm just saying that and so if let's just say we said okay it's got to go back to the district court. Wouldn't if if but if we thought that the new evidence certainly raised a possibility that they could succeed on the merits. I'm assuming that we would need to put a stay in place at least for a period of time for the district court to look at it. So the government couldn't just flip in in that time from here to the district court and put MSMR on a plane if we're concerned about that. I think your honor I definitely recognize that concern. I want to say that the government has multiple office offers to petitioner to agree to stays of removal for lengths of time to resolve this case. And those have been rejected. So I don't think it's it's quite correct to say that the government has a motivation to to remove them immediately. The government has been willing to to let the case play out. And as my colleague said there is a pending PFR that was just filed two days ago. That that is before the ninth circuit in the absence of I suspect they haven't moved for a stay in that PFR proceeding because there there's a stay in this. And but but if there were no stay in this proceeding they would certainly have the option to seek a stay in conjunction with that proceeding and to to let a relief available to petitioner play out. I mean place they have no legal status here. Is that correct? They can't they can't get any relief. That's correct. And and and the BIA having denied their second motion to their appeal of the second denial of a motion to reopen means that it they have an executable final order of removal. That is correct. And so in the absence of this court stay it is technically correct that ICE has no in place. I suspect they would have sought a sought a stay in conjunction with the PFR. And there's certainly every likelihood that a ninth circuit panel might might grant that in that context. But but yes this stay is entirely in in place in recognition of at least in in conjunction with the claims that removal with with a potential head injury is that is the harm here. And it is and it would be separate and apart from this standpoint. Let's say they get no relief there so they have no legal status here that but if if say this went back to the district court and hypothetically with the new evidence the district court said well I'm going to grant a TRO but I'm going to have status reports because just the minor having TBI does not grant legal status to the family. Right? Correct. Am I right on that? So at some point if the TBI is resolved and they don't get relief in the immigration case then you would ask for relief from the TRO to execute. Is that correct? I think that's correct your honor and I think where we would be is you know the question at that point would be what is the medical status at that time which I think is sort of the crux of is there is there really a basis to keep this case alive when the question down the line may become what is the medical status after recognizing a long period of release where the government has no no is not the cause of any continuing harm is no control over the medical care that is being provided. And so I think with a scenario where that is what the district court the the road the district court went down I would I am I correct that you can't go on a train to Guatemala? Is that is that correct? I'm not aware of the government having removed someone by train certainly to Guatemala or anywhere else down that far south. So I think I mean I think it is I it is in effect a stay of removal for this individual to say that the government can't put him on a plane. Now the the the issue here is is is that a live question in this case given that the concern for his being put on the plane was that he had been picked up before he could go back to his next round of medical appointments before he could be evaluated and before he could be provided where the government was at that time the entity that was denying him access to treatment. Since that there is no longer any it is not be we cannot go back to that place where the government is is in is in between him and treatment because he is now out having the treatment. It will it remains to be seen if there comes a time where he becomes removable and where the government decides that they're going to effectuate that removal that what will be the medical status there and will it be a danger to put him on a plane. It will not be the same question that it would have been in February. It will be a new question of what are the circumstances at that time and I think that that is the crux of the government's argument that this case is moved. Well if we were to affirm the petitioners still obtain judicial consideration of the new record evidence. I assuming that that in so doing this court is also saying that the district court has habeas jurisdiction which I think it would be necessary then I think that then you'd be we'd be back in the district court and the district court would have sort of the habeas petition and issue an order to show cause and likely in my experience with habeas cases the district courts will frequently then ask for the additional evidence they want to be ruling on the current status of the case and so at that point yes I think the district court would be deciding the habeas asking for for updates as to where where we are today. Oh are they under some sort of confinement in the central district though right now by having to they have to report right they kind of like have a lojack on them don't they I mean I think that's correct your honor what I would say as far as habeas jurisdiction though to that point is that again this goes to my colleagues assertion and adamance that this is not a non-core habeas so continued custody under an order of supervision would maybe eliminate mootness in the habeas context where the habeas case is about detention itself that is why continued restriction under an order of supervision might might cause the case not to be moved but again so what's the government's position are do you are you arguing that it is actually a core habeas case and so then you should be transferred I think at least we're ambiguous on that point I would say I think that's I think that's fair um I would say that there there is I guess what I would say is I don't think that it matters I think if there is a court if it is a core habeas then I think we would all recognize that there's a strong reason to find that it should have been filed in the western district but if it's not a core habeas then we're looking at traditional venue analysis and the two defendants are not located in the central district of california at the time of filing the petitioners were not in the central district of california and so you go to the question of the substantial uh substantial events and omissions related to the habeas and there again when we're in my colleagues you want to pick a side miss fabian you're you're telling us what the analysis would be well what's the government's position is it core habeas or is there not venue venue should have been um whether core or non-core venue was properly located in the western district of california or sorry the western district of texas unless your honors have any other questions i'll conclude i think that the government's position is this court this case could be resolved at this time by this court finding that there's not jurisdiction over the underlying habeas or by this court finding that the case has become moot both of those would be good reason to dismiss the appeal at this time all right thank you uh mr ogata you have two minutes thank you your honor i just want to pick up on your honor's questions regarding whether or not this case should go back to the district court your honor picked up on exactly the issue before this court that substantial evidence has been developed because of the motions panel grant of injunction or granting in part of the injunction and the stay of removal the the appellate record in this case is now substantially more robust than anything that was before the district court and the district court should have an opportunity to engage in fact-finding abilities and review that evidence to determine if the trou should issue i think your honor is correct that the options of reversing or affirming the district court would indicate the district court properly exercised jurisdiction over this case as well as that venue was proper and appellancy no issue with that because it being a non-core habeas petition venue was proper in the central district of california jurisdiction under that same analysis demonstrates that that jurisdiction was proper there as well for those reasons this court can either find that the district court abused its discretion in making factual determinations that were in conflict with the expert medical evidence before it which is now supported by the as your honor kind of noted the expert medical evidence developed on appeal though we recognize that wasn't before the district court at that time or if this court was inclined to agree with the district court and affirm you could send it back down with instructions to re-evaluate based off of the new evidence procedurally perhaps the cleanest way to do that would be simply to vacate the district court judge's order and send it back down with instructions to re-evaluate the case back based on the new factual determination found on appeal we believe that the district or the government's analysis here is too focused on the fact that appellants are either detained or not detained it's not so much the focus on that but what they're they're threatened with the process of getting put on a plane or being deported which would further exacerbate or harm msmr and for those reasons because we believe the district court aired and because there is new on appeal this court should send the case back to the district court to exercise its proper fact-finding abilities and instruct them to issue the trou all right i want to thank do either of my colleagues have any additional questions of mr ogata all right i want to thank both of you for your oral argument in this matter you were both obviously very prepared i also i realized mr ogata that you're appearing pro bono not necessarily through the ninth circuit pro bono uh we always do value uh pro bono representation um it helps the development of the record and helps us decide the cases so i want to thank both of you for appearing today and for a good argument all right this matter will then be submitted and i believe that places this court in recess for the week
judges: Callahan, Presnell, Bumatay